# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LEVANDA NORMAN, | ) | CRIMINAL CASE NO.  1:12CR252 |
| | ) | CIVIL CASE NO. 1:13CV2661 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is a motion to vacate, set aside, or correct sentence filed by *pro se* petitioner Levanda Norman ("petitioner" or "Norman") pursuant to 28 U.S.C. § 2255 (Doc. No. 15 ["Mot."]).[1] Respondent United States of America ("government") opposes the motion (Doc. No. 17 ["Opp."]).

## I. BACKGROUND

On May 15, 2012, petitioner was charged in a two-count information with bank fraud in violation of 18 U.S.C. § 1344, and theft of government property in violation of 18 U.S.C. § 641. (Doc. No. 1.) The charges involved a scheme to commit mortgage fraud by using false statements on mortgage documents. On June 25, 2012, petitioner entered a counseled plea of guilty to these two counts pursuant to a plea agreement. (Doc. No. 4 ["Plea Agreement"].) The plea agreement contained a jointly

---

[1] Unless otherwise indicated, all document references are to Norman's criminal case—Case No. 1:12CR252. Additionally, all page number references are to the page identification number generated by the Court's electronic docketing system.

recommended guideline computation using the 2012 Federal Sentencing Guidelines, a detailed account of the factual basis for the charged crimes, and a waiver of appellate and post-conviction rights. The waiver specifically included the right to file a § 2255 motion. (Plea Agreement at 16.)

As to the computation of the applicable advisory sentencing range, the Plea Agreement provided for a base offense level of 7, pursuant to U.S.S.G. § 2B1.1(a)(1)(B), to which 16 levels was added, pursuant to § 2B1.1(b)(1)(I), because the amount of the loss was more than $1,000,000.00. Two more levels were added, pursuant to § 2B1.1(b)(14)(A), because the $1,000,000.00 plus loss was attributed to a financial institution. Two additional levels were added, pursuant to § 3B1.1(c), because petitioner held a leadership role in the fraudulent scheme. After applying a three-point reduction for acceptance of responsibility, the total offense level was calculated to be 24. (Plea Agreement at 15-16.)

At the direction of the Court, a Presentence Investigation Report ("PSR") was prepared by U.S. Pretrial Services and Probation. Consistent with the Plea Agreement, the PSR recommended a total offense level of 24. There was no agreement as to the applicable criminal history category, and the PSR recommended a finding of 0 criminal history points, resulting in a criminal history category of I. The advisory guideline range of imprisonment for an offense level of 24 and a criminal history category I is 51 to 63 months. Defendant did not file objections to the PSR. Instead, defense counsel filed a sentencing memorandum, wherein he advocated for a sentence at the low end of the applicable guideline range. (Doc. No. 9.)

On October 2, 2012, petitioner was sentenced to a term of imprisonment of 48 months on each count, to run concurrently. The Court made a downward variance from the recommended sentencing guidelines range in arriving at petitioner's sentence.

Petitioner did not take a direct appeal from her conviction and sentence. Rather, on January 3, 2013, petitioner filed the instant § 2255 motion, asserting that she was sentenced in violation of her constitutional right against *ex post facto* punishment by the use of the then-current sentencing guidelines, rather the guidelines in effect when petitioner committed her crimes. She also challenges the two point assessment for her leadership role in the fraud scheme, as well as the calculation of the loss amount. Additionally, she complains, without support, that several of the victim banks were not insured by the Federal Deposit Insurance Corporation ("FDIC"). After several delays caused by petitioner, the motion is now fully briefed and finally ripe for resolution. (*See* Doc. Nos. 18-21.)

**II.  STANDARD OF REVIEW**

A federal prisoner may attack the validity of her sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where she was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

In order to obtain relief under § 2255, a petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Griffin*, 330 F.3d at 736 (quoting *United States v. Davis*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). Nevertheless, the Court recognizes petitioner's *pro se* status and applies a lenient construction to her motion. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

A court should hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Thus, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). When (as here) the judge considering the § 2255 motion also presided over the plea, the judge may rely on his or her recollections of the proceedings. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

The Court finds that an evidentiary hearing is not warranted in the present case. As the analysis below demonstrates, the allegations in petitioner's motion cannot be accepted as true because they are either conclusively refuted by the record or misguided and unsubstantiated conclusions. *See Arredondo*, 178 F.3d at 782.

4

### III. DISCUSSION

#### A.     *Ex Post Facto Claim Under Peugh*

The focal point of petitioner's § 2255 motion is her claim that the use of the 2012 sentencing guidelines subjected her to *ex post facto* punishment "when the year [her] offense ended was 2007." (Mot. at 66.) In support of this claim, petitioner cites *Peugh v. United States*, --U.S.--, 133 S. Ct. 2072, 186 L. Ed. 2d 84 (2013). In *Peugh*, the defendant argued at sentencing that the 1998 version of the sentencing guidelines in effect at the time of his offense, rather than 2009 version in effect at the time of sentencing, should apply. The district court applied the 2009 version of the guidelines, and the result was a higher sentencing range. *Id*. at 2078-79. The Seventh Circuit affirmed the sentence on direct appeal. The Supreme Court accepted certiorari review and reversed and remanded for resentencing. In so ruling, the Court held that the Ex Post Facto Clause of the U.S. Constitution is violated "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Id*. at 2078.

Petitioner argues that, under *Peugh*, her sentence is invalid. Petitioner's argument fails for several reasons. First, after the government filed its opposition, a panel of the Sixth Circuit joined the majority of courts that have held that *Peugh* announced a new rule of constitutional law that is not available to cases on collateral review. *See Rogers v. United States*, 561 F. App'x 440, 443-44 (6th Cir. 2014) ("the constitutional

rules of criminal procedure adopted in *Alleyne*[2] and *Peugh* are not applicable on collateral review of Rogers's sentence, because the judgment became final before the Court's decision in *Alleyne* and *Peugh"*) (citing *Teague v. Lane*, 489 U.S. 288, 310-11, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)); accord *Herrera-Gomez v. United States*, 755 F.3d 142, 147 (2d Cir. 2014); *Hawkins v. United States*, 724 F.3d 915, 917-18 (7th Cir. 2013); *Ervin v. United States*, Civil No. 6:13-cv-5103, DGK, Crim. No. 6:11-cr-5046-DGK, 2014 WL 856526, at *5 (W.D. Mo. Mar. 5, 2014); *United States v. Locke*, 978 F. Supp. 2d 23, 33-34 (D.C.C. 2013); *see also Tyler v. Cain*, 533 U.S. 656, 663, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001) ("[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive.") (citation and quotation marks omitted).

Petitioner's judgment was entered on October 2, 2012, and, because she did not take a direct appeal, became final 10 days later. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004) ("when a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed. In most cases, that period is ten days, pursuant to Fed. R. App. P. 4(b)(1).") Because the Supreme Court's decision in *Peugh* was not announced until June 10, 2013—eight months after petitioner's judgment was final— it has no application

---

[2] In *Alleyne v. United States*, --U.S.--, 133 S. Ct. 2151, 2158, 186 L. Ed. 2d 314 (2013), the Court held that "[f]acts that increase the mandatory minimum sentence are . . . elements  [of the offense] and must be submitted to the jury  and be found beyond a reasonable doubt."

here. *See, e.g. United States v. Gold*, No. 3:95-00074, 2014 WL 3556060, at *4 (M.D. Tenn. July 18, 2014) (citing *Rogers*, 561 F. App'x at 443-44).

Even if the ruling in *Peugh* was available to defendants on collateral review, it would be of no use to petitioner because she overlooks the fundamental limitation in the rule announced in *Peugh*: namely, that an *ex post facto* violation only occurs when the reliance on the newer sentencing guidelines results in a *higher* sentencing range. 133 S. Ct. 2078. As the government notes, the 2007 and the 2012 sentencing guidelines for U.S.S.G. § 2B1.1 guideline computation are identical. The only difference is that the enhancement of two levels for a loss of more than $1,000,000 from a financial institution is enumerated at § 2B1.1(b)(13) in the 2007 sentencing guidelines rather than § 2B1.1(b)(15) in the 2012 sentencing guidelines. As a result, petitioner's advisory sentencing range would have been the same under either version of the guidelines. Therefore, her challenge under *Peugh* fails for this additional reason. *See, e.g., Miles v. United States*, No. 1:10-CR-00076-JAW, 2014 WL 1404561, at *4 (D. Me. Apr. 10, 2014) ("guidelines range did not change between the time of [p]etitioner's offenses and the time of his sentencing"); *Ervin*, 2014 WL 856526, at *5 (noting movant's sentencing range was the same under either version of the guidelines); *United States v. Cooke*, No. 2:10-00010, 2013 WL 3991802, at *2 (M.D. Tenn. Aug. 2, 2013) ("The defendant has not shown that the Sentencing Guidelines applied by the Court at her sentencing carried a higher applicable sentencing range than the Guidelines in effect at the time she committed the offense. Thus, *Peugh* does not support a reduction in the Defendant's sentence.")

B.      *Factual Predicate for the Judgment*

Petitioner argues, without support, that her judgment is deficient for three additional reasons: (1) several of the victim banks were not FDIC insured, as required for conviction under 18 U.S.C. § 1344; (2) the loss amount was improperly calculated for purposes of sentencing; and (3) two points were improperly added to the guidelines calculation for a leadership role, where she and her co-defendant were partners.  (Mot. at 69-73.) Each argument is without merit.

As previously stated, petitioner waived her right to take an appeal from her judgment. (Plea Agreement at 16-17.) Pursuant to the Plea Agreement, petitioner also explicitly stipulated that the two-level increase for leadership, as well as the increases for a loss exceeding $1,000,000 from a financial institution, applied to her guidelines calculation. (*Id*. at 15.) She further expressly agreed that, had the case proceeded to trial, the government would have been able to prove beyond a reasonable doubt that the victim banks "were insured by the Federal Deposit Insurance Corporation[.]" (*Id*. at 18.)

"It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (quoting *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995)); *see United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012). "[A] defendant in a criminal case may waive his right to appeal his sentence in a valid plea agreement." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) (citations omitted). Only challenges to the validity of the waiver itself are to be entertained. *See In Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *see also Smith*, 344 F.3d at 483 ("When a [d]efendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by

8

that agreement and will not review the sentence except in limited circumstances.")
(citation omitted). "For a plea agreement to be constitutionally valid, a defendant must
have entered into the agreement knowingly and voluntarily." *Smith*, 344 F.3d at 483
(citing *Fleming*, 239 F.3d at 764); *see Fleming*, 239 F.3d at 764 (stating that "the sine qua
non of a valid waiver is that the defendant enter into the agreement knowingly and
voluntarily") (citation omitted).

   In the Plea Agreement, petitioner specifically waived her right to file a §
2255 motion, as well as the right to challenge the very factual findings she is now raising
on collateral review. During the guilty plea hearing, the Court engaged petitioner in a
thorough colloquy in which the Court was ultimately assured that petitioner both
understood the nature of the waiver and had entered into the waiver voluntarily, after
having been afforded sufficient time to consult with counsel. Even now, petitioner does
not suggest that her waiver was other than knowingly and voluntarily given.
Consequently, the Court finds that her knowing and voluntary waiver precludes these
remaining arguments.

   Of course, even if the Court had entertained these arguments on the merits,
they would have failed. As to each contention, petitioner has failed to point to any
evidence that would have even suggested, let alone established, that petitioner's sentence
was the result of error of fact or law that was so fundamental as to render the entire
proceeding invalid. *See United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011)
(citation and quotation marks omitted); *Mallet v. United States*, 344 F.3d 491, 496 (6th
Cir. 2003) (citation omitted); *United States v. Goodrum*, 584 F. Supp. 2d 1026, 1030
(N.D. Ohio 2008).

**IV. CONCLUSION**

For all of the foregoing reasons, petitioner's motion to vacate, set aside, or correct her sentence is denied. Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: December 31, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**